LATHAM & WATKINS LLP
Mark A. Flagel (State Bar No. 110635)
Bob Steinberg (State Bar No. 126407)
Franklin D. Kang (State Bar No. 192314)
355 South Grand Avenue
Los Angeles, California  90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

LATHAM & WATKINS LLP
Dean G. Dunlavey (State Bar No. 115530)
650 Town Center Drive, 20th Floor
Costa Mesa CA 92626-1925
Telephone:  (714) 755-8260
Facsimile:  (714) 755-8290

FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
Scott R. Mosko (State Bar No. 106070)
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304-1203
Telephone:  (650) 849-6600
Facsimile:  (650) 849-6666

Attorneys for Plaintiff
MONOLITHIC POWER SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> O2 MICRO INTERNATIONAL LIMITED, <br><br> Defendant | Case No. C 08-4567 CW <br><br> **SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |
| O2 MICRO INTERNATIONAL LIMITED, <br><br> Counterclaimant, <br><br> v. <br><br> MONOLITHIC POWER SYSTEMS, INC., ASUSTEK COMPUTER INC., ASUSTEK COMPUTER INTERNATIONAL AMERICA, BENQ CORPORATION, AND BENQ AMERICA CORP., <br><br> Counterclaim-Defendants. | |

Plaintiff Monolithic Power Systems, Inc. ("MPS") hereby pleads the following claims for Declaratory Judgment against Defendant O2 Micro International Limited ("O2 Micro"), and alleges as follows.

## PARTIES

1. Plaintiff MPS is a corporation organized under the laws of the State of Delaware with its principal place of business located at 6409 Guadalupe Mines Road, San Jose, California 95120.

2. Defendant O2 Micro is a corporation organized under the laws of the Cayman Islands with its principal place of business located at Grand Pavilion Commercial Centre, West Bay Road, PO Box 32331 SMB, George Town, Grand Cayman, Cayman Islands, but doing business throughout this judicial district and around the world.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action and the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* and the Patent Act of the United States, 35 U.S.C. § 101 *et seq*.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(d) because O2 Micro is an alien corporation organized under the laws of the Cayman Islands subject to suit in this judicial district.

## INTRADISTRICT ASSIGNMENT

5. This action for a declaratory judgment of non-infringement and invalidity of patents is assigned on a district-wide basis under Civil L.R. 3-2(c).

## GENERAL ALLEGATIONS

6. This action involves U.S. Patent No. 6,856,519 ("the '519 patent"), attached hereto as Exhibit A; U.S. Patent No. 6,809,938 ("the '938 patent") attached hereto as Exhibit B; U.S. Patent No. 6,900,993 ("the '993 patent") attached hereto as Exhibit C; U.S. Patent No. 7,120,035 ("the '035 patent") attached hereto as Exhibit D; and U.S. Patent No. 7,417,382 ("the '382 patent") attached hereto as Exhibit E (collectively "the patents-in-suit"). The '938, '993, and '035 patents

1  are a division of the '519 patent and are directed to multifunctional/multitasked pin technologies.
2  The '382 patent is directed to cold cathode fluorescent lamp ("CCFL") inverter circuits.

3      7.    MPS has developed power inverter controller products, including the inverter
4  controllers MP1009, MP1010B, MP1026, MP1038, and MP1048, without knowledge of any of
5  the patents-in-suit.

6      8.    Separately on July 31, 2008 and September 17, 2008, O2 Micro telephoned MPS's
7  customer Innolux Display Corporation ("Innolux"), alleging that MPS's MP1009 product
8  infringed the multifunctional/multitasked pin related patents of O2 Micro and that O2 Micro
9  planned on instituting a lawsuit against MPS on those patents.

10      9.    Upon information and belief, O2 Micro contends that the MP1009 product, and
11  devices incorporating that product, infringe one or more claims of the '938, '993, '035 and '519
12  patents, and that those claims are valid.

13      10.    MPS denies that the MP1009 product or any of MPS's other products infringe any
14  claim of the '938 patent, the '993 patent, the '035 patent or the '519 patent, and also denies that
15  these patents are valid.

16      11.    Further, on December 15, 2008, O2 Micro (and O2 Micro, Inc.) filed an
17  investigation with the International Trade Commission ("ITC") claiming that the '382 patent, the
18  '519 patent, the '938 patent, and the '035 patent are infringed by certain MPS products,
19  specifically the MP1009, the MP1010B, the MP1026, the MP1038, and the MP1048 products
20  (collectively, the "Accused Products").

21      12.    MPS developed the MP1009, the MP1010B, the MP1026, the MP1038, and the
22  MP1048 product families without knowledge of any of the patents-in-suit.

23      13.    MPS denies that the Accused Products or any of MPS's other products infringe any
24  claim of the '382, '519, '938, and '035 patents.  MPS also contends that these patents are invalid.

25  **FIRST CLAIM FOR RELIEF**
26  **Declaratory Relief Regarding Non-Infringement**
27      14.    MPS incorporates herein the allegations of paragraphs 1-13.
28

15. An actual and justifiable controversy exists between Plaintiff MPS and Defendant O2 Micro as to non-infringement of the patents-in-suit, which is evidenced by O2 Micro's repeated assertions to Innolux that MPS's MP1009 product infringes valid claims of the '938, '993, '035 or '519 patents; the complaint filed by O2 Micro before the ITC, which alleges infringement of the '382, '519, '938, and '035 patents by the Accused Products; and MPS's allegations herein.

16. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., MPS requests the declaration of the Court that MPS does not infringe and has not infringed any claim of the patents-in-suit.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief Regarding Invalidity

17. MPS incorporates herein the allegations of paragraphs 1-13.

18. An actual and justifiable controversy exists between Plaintiff MPS and Defendant O2 Micro as to the invalidity of the patents-in-suit, which is evidenced by O2 Micro's repeated assertions communicated to Innolux that MPS's MP1009 product infringes valid claims of the '938, '993, '035 or '519 patents; the complaint filed by O2 Micro before the ITC, which alleges infringement of the '382, '519, '938, and '035 patents by the Accused Products; and MPS's allegations herein.

19. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., MPS requests the declaration of the Court that the patents-in-suit are invalid under the Patent Act, 35 U.S.C. § 101 *et seq*., including, but not limited to, sections 102, 103 and 112.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief Regarding Inequitable Conduct

20. MPS incorporates herein the allegations of paragraphs 1-13.

21. An actual and justifiable controversy exists between Plaintiff MPS and Defendant O2 Micro as to the enforceability of the patents-in-suit, which is evidenced by O2 Micro's repeated assertions communicated to Innolux that MPS's MP1009 product infringes valid claims of the '938, '993, '035 or '519 patents; the complaint filed by O2 Micro before the ITC, which

Case No. C08-4567 CW
SECOND AMENDED COMPLAINT

alleges infringement of the '382, '519, '938, and '035 patents by the Accused Products; and MPS's allegations herein.

22. MPS is informed and believes, and therefore alleges, that all claims of the patents-in-suit are unenforceable by virtue of the failure of the patent applicants and/or others with a duty of candor to the United States Patent and Trademark Office (the "PTO") to act with the candor and good faith required of persons who prepare or prosecute patent applications. These failures include: (1) the failure to disclose material prior art and information known to the patent applicants and/or others having substantial responsibility for the prosecution of the patents-in-suit, and (2) the deliberate "burying" of the PTO examiners with thousands of pages of non-material documents in order to conceal the clearly invalidating prior art. In particular, all claims of the patents-in-suit are unenforceable for at least the following reasons:

23. On information and belief, all claims of the '382 patent are unenforceable because the patent applicant, Yung-Lin Lin, and/or other persons having substantial responsibility for the prosecution of the application knowingly and willfully "buried" the PTO examiner with a huge volume (approximately 14,000 pages) of pleadings, motions, claim construction briefs, discovery responses, and similar documents from various lawsuits, and thousands more pages of prior art references that were not material in order to obscure those references that were material to the patentability of the claims. Those persons provided the PTO examiner with no guidance as to the purported relevance of those documents and did nothing to identify which documents amongst the tens of thousands of pages were material. Through this stratagem, those persons ensured that the application would not be properly evaluated. Indeed, the PTO examiner reviewing the '382 patent application explicitly stated that:

> [I]t is impractical for the examiner to review the references thoroughly with the number of reference [sic] cited in this case. . . .
>
> Further, it should be noted that an applicant's duty of disclosure of material and information is not satisfied by presenting a patent examiner with "a mountain of largely irrelevant material from which he is presumed to have been able, with his experience and with adequate time, to have found the critical [material]. It ignores the real world conditions under which examiners work."

1  Notice of Allowability (Dec. 28, 2007), at 2-3 (citing *Rohm & Hass Co. v. Crystal Chemical Co.*,
2  722 F.2d 1556, 1573 (Fed. Cir. 1983)).

3      24.    On information and belief, all claims of the '382 patent are unenforceable because
4  the patent applicant, Yung-Lin Lin, and/or other persons having substantial responsibility for the
5  prosecution of the application knowingly and willfully misled the PTO examiner by submitting
6  and relying upon the September 25, 2006 declaration of purported inventor Lin.  In his
7  declaration, Lin "swore behind" the January 22, 1999 filing date of U.S. Patent No. 6,108,215,
8  which had been cited as prior art by the PTO examiner.  (The provisional application ultimately
9  leading to the '382 patent was filed on July 22, 1999.)  Under oath, Lin falsely stated:  "The
10 declaration made hereof is to establish a conception of the invention in this Application in the
11 United States, at a date prior to January 22, 1999 . . . .  The present invention was conceived at
12 least as early as February 18, 1998."  Lin submitted and relied upon a circuit diagram that was
13 purportedly dated February 18, 1998.  However, as Lin and the other persons having substantial
14 responsibility for the prosecution of the application knew, the circuit diagram purportedly dated
15 February 18, 1998 did not contain the "capacitor divider," the "feedback signal coupled to said
16 capacitor divider," the "timer circuit coupled to said first feedback signal," the "protection circuit
17 coupled to said timer circuit," or other limitations that are required by each of the asserted claims
18 of the '382 patent.  On information and belief, Lin had not conceived of the claimed combinations
19 of these elements until July 1999 or later.

20     25.    Yung-Lin Lin testified in the April – May 2007 trial in *Monolithic Power Systems,*
21 *Inc v. O2 Micro Int'l Ltd.*, Case No. C 04-2000 CW (N.D. Cal.).  During this trial, all of the
22 asserted claims of O2 Micro's Patent No. 6,396,722 ("the '722 patent") were held to be invalid.
23 The '722 patent is the great grandparent of the '382 patent.  When not testifying, Lin observed the
24 trial. During the trial, MPS introduced a schematic drawing, dated October 2, 1998, depicting a
25 CCFL inverter circuit employing an MPS product that, according to the way O2 Micro is seeking
26 in the complaint it has filed with the International Trade Commission (the "ITC Compliant") to
27 apply the claims of the '382 patent to the Accused Products and its own products, utilized a
28 capacitor-based voltage divider coupled to a CCFL to provide a voltage signal representing a

1  voltage across the CCFL, together with a timer circuit to shut down the operation of the inverter
2  circuit in the event of an overvoltage condition.  On information and belief, Lin and other persons
3  having substantial responsibility for the prosecution of the '382 application realized that this
4  schematic drawing was invalidating prior art or otherwise material to the PTO examiner's
5  consideration of the patentability of the '382 patent claims.  Those persons knowingly and with
6  intent to mislead concealed the schematic drawing from the PTO examiner.

7  26. On information and belief, all claims of the '382 patent are unenforceable because
8  the patent applicant, Yung-Lin Lin, and/or other persons having substantial responsibility for the
9  prosecution of the application knowingly and willfully misled the PTO examiner by failing to
10 submit the October 30, 2007 order of this Court (the October 30 Order).  The October 30 Order
11 upheld the May 15, 2007 jury verdict that all the asserted claims of the '722 patent were invalid
12 under 35 U.S.C. § 102(b) because the invention was on sale in the United States before July 22,
13 1998 ("on-sale bar") and that the asserted claims were invalid under 35 U.S.C. § 103 for
14 obviousness.  On August 10, 2007, O2 Micro filed renewed motions for judgment as a matter of
15 law ("JMOL"), asking this Court to direct the entry of judgment in its favor on MPS's on-sale bar
16 and obviousness defenses.  The October 30 Order denied O2 Micro's JMOL motions and detailed
17 the fallacies in O2 Micro's arguments.

18 27. Remarkably, neither Lin nor the other persons having substantial responsibility for
19 the prosecution of the patent application that resulted in the issuance of the '382 patent disclosed
20 the October 30 Order to the PTO examiner.  The October 30 Order would have been material to
21 the prosecution of the application for the '382 patent.  If submitted to the PTO, the October 30
22 Order would have provided additional facts and context to the PTO examiner with which to
23 evaluate the significance and high degree of materiality of the prior art MP1010 product and U.S.
24 Patent No. 5,923,129, issued to Henry.  On information and belief, despite knowing the
25 significance of the October 30 Order, Lin and other persons having substantial responsibility for
26 the prosecution of the application intentionally withheld this document while producing thousands
27 of pages of wholly irrelevant documents.  This was done in order to mislead the PTO.

28

1         28.     On information and belief, all claims of the '519, '938, '993 and '035 patents are
2 unenforceable because, in prosecuting these patents, the patent applicants and/or other persons
3 having substantial responsibility for the prosecution of the applications repeatedly represented that
4 the prior art did not disclose an inverter circuit in which one input pin received more than one
5 independent input signal during operation.  In making these representations, those persons
6 concealed from the PTO examiner O2 Micro's own OZ960A and OZ962 controllers, which
7 O2 Micro sold in the United States in 1997, years before the May 6, 2001 critical date applicable
8 to these patents.  The OZ960A and OZ962 controllers contained at least one input pin that,
9 according to the way O2 Micro is seeking to apply the asserted claims to the Accused Products
10 and to its own products in the ITC Compliant, received multiple independent input signals during
11 operation.  Patent applicant Yung-Lin Lin, in particular, had personal knowledge of the circuitry
12 contained within the OZ960A and OZ962 controllers and the 1997 sales, yet he concealed this
13 invalidating information from the PTO examiner.

14         29.     On information and belief, all claims of the '519, '938, '993 and '035 patents are
15 unenforceable because, in prosecuting these patents, the patent applicants and/or other persons
16 having substantial responsibility for the prosecution of the applications knowingly and willfully
17 made false statements to the PTO examiner mischaracterizing the nature of the O'Neill reference
18 (U.S. Patent No. 6,198,236).  In particular, those persons told the PTO examiner that "there is no
19 teaching in O'Neill of independent signals on one input."  However, when those persons made that
20 assertion, they knew that the Vc pin of the Linear LT-1072 product disclosed in O'Neill receives
21 the same two input signals that O2 Micro is now claiming in its ITC Complaint constitute the two
22 signals its own products receive on a single input pin (which O2 Micro claims shows that its own
23 products purportedly practice the asserted claims of these patents).  Thus, on information and
24 belief, the patent applicants and/or other persons having substantial responsibility for the
25 prosecution of the applications intentionally made false and misleading assertions to secure
26 issuance of the patents, and O2 Micro is now attempting to ignore those assertions in an attempt to
27 read the patents onto the Accused Products.
28

1  30. On information and belief, all claims of the '519, '938, '993 and '035 patents are
2  unenforceable because, in prosecuting the '035 patent, the patent applicants and/or other persons
3  having substantial responsibility for the prosecution of the applications knowingly and willfully
4  made false statements to the PTO examiner mischaracterizing the nature of the Poisner reference
5  (U.S. Patent No. 6,567,866).  In particular, those persons told the PTO examiner that Poisner does
6  not disclose two input signals on one input pin "during operation" of the circuit.  When they made
7  this assertion, those persons knew it was false, and that the referenced Poisner input pin, in
8  addition to receiving one externally generated signal, would also receive a second internally
9  generated signal during operation.  Now, after having made this misrepresentation, O2 Micro
10 seeks to read these patents onto Accused Products by purporting to identify internally generated
11 signals as "input signals" received by an input pin.  This purported reading of the asserted claims
12 onto the Accused Products in this manner demonstrates the knowing falsity of the statements
13 made to the PTO examiner and the misuse and unenforceability of these patents.  (In the
14 alternative, and should O2 Micro purport to argue that O'Neill and Poisner do not disclose an
15 input pin that receives multiple independent input signals as claimed in these patents, then
16 O2 Micro's counterclaims should be summarily dismissed as to these patents because, for the
17 same reasons, the asserted claims could not read on the Accused Products.)

18 31. The foregoing list of unenforceability contentions is not exhaustive, and discovery
19 is ongoing.

20 32. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., MPS
21 requests the declaration of the Court that the patents-in-suit were obtained through inequitable
22 conduct and are therefore unenforceable.

### PRAYER FOR RELIEF

24 WHEREFORE, Plaintiff MPS prays that the Court enter declaratory judgment as follows:
25 (1) That MPS does not infringe and has not infringed, directly or indirectly, any of the
26 patents-in-suit;
27 (2) That the patents-in-suit are invalid;
28 (3) That the patents-in-suit are unenforceable;

1      (4)    That O2 Micro, and all persons acting on its behalf or in concert with it, be permanently enjoined and restrained from charging, orally or in writing, that any of the patents-in-suit is infringed by MPS, directly or indirectly;

     (5)    That MPS be awarded its costs, expenses and reasonable attorney fees in this action; and,

     (6)    That MPS be awarded such other and further relief as the Court may deem appropriate.

Dated: May 5, 2009                Respectfully submitted,

                                          LATHAM & WATKINS LLP

                                          By:       /s/
                                                     Franklin D. Kang

                                          Attorneys for Plaintiff and Counterclaim-Defendant
Monolithic Power Systems, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff MPS hereby demands a jury trial in this action.

Dated:  May 5, 2009                    Respectfully submitted,

                                       LATHAM & WATKINS LLP


                                       By:  ⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯
                                              Franklin D. Kang

                                       Attorneys for Plaintiff and Counterclaim-Defendant
                                       Monolithic Power Systems, Inc.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities, other than the parties themselves, are known by MPS (i) to have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) to have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.  Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated:  May 5, 2009

Respectfully submitted,

LATHAM & WATKINS LLP

By: _____/s/_____
    Franklin D. Kang

Attorneys for Plaintiff and Counterclaim-Defendant
Monolithic Power Systems, Inc.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 5th day of May, 2009, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system. Any other counsel of record will be served by a facsimile transmission and/or first class mail.

_/s/_
Franklin D. Kang
