1

2

3

4               IN THE UNITED STATES DISTRICT COURT

5

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                                          No. C 08-04567 CW

8  MONOLITHIC POWER SYSTEMS, INC.,
                                           ORDER ON CLAIM
9          Plaintiff,                      CONSTRUCTION, CROSS
                                           MOTIONS FOR SUMMARY
10     v.                                  ADJUDICATION AND
                                           SUMMARY JUDGMENT,
11 O2 MICRO INTERNATIONAL LIMITED,         MPS AND ASUSTEK'S
                                           MOTION TO STRIKE, O2
12         Defendant.                      MICRO'S EVIDENTIARY
   _____/       OBJECTIONS AND
13                                         ALTERNATIVE MOTION
   O2 MICRO INTERNATIONAL LIMITED,         FOR LEAVE TO
14                                         SUPPLEMENT RECORD
           Counterclaimant,                AND O2 MICRO'S
15                                         SECOND MOTION FOR
       v.                                  LEAVE TO SUPPLEMENT
16                                         THE RECORD
   MONOLITHIC POWER SYSTEMS, INC.;         (Docket Nos. 157,
17 ASUSTEK COMPUTER INC.; ASUSTEK          233, 238, 250, 252)
   COMPUTER INTERNATIONAL AMERICA; BENQ
18 CORPORATION; and BENQ AMERICA CORP.,

19         Counterclaim-Defendants.

20 _____/

21     Counterclaimant O2 Micro International Limited and

22 Counterclaim-Defendants Monolithic Power Systems, Inc. and ASUSTeK

23 Computer Inc. and ASUSTeK Computer International America

24 (collectively, ASUSTeK)[1] dispute the meaning of phrases used in O2

25 Micro's U.S. Patent No. 7,417,382 ('382 patent).  In addition, O2

26

27 _____

28      [1] In June, 2009, O2 Micro and BenQ stipulated to the dismissal
   of O2 Micro's claims against BenQ.

Micro moves for summary adjudication on the authenticity of
schematics dated "Feb., 18, 1998" and on the invention date of the
'382 patent (Docket No. . MPS and ASUSTeK oppose the motion, and
cross-move for summary judgment of invalidity and non-infringement
and summary adjudication of the date of conception and lack of
willfulness. MPS and ASUSTeK also move to strike portions of O2
Micro's papers. O2 Micro opposes their motions and objects to
evidence submitted along with MPS and ASUSTeK's surreply brief. In
a motion filed after briefing concluded on these matters, O2 Micro
seeks to supplement the record with material from In the Matter of
Certain Cold Cathode Flourescent Lamp ("CCFL") Inverter Circuits
and Products Containing Same, Inv. No. 337-TA-666, the parallel
International Trade Commission (ITC) proceeding on infringement of
the '382 patent. The motions were heard on December 10, 2009.
Having considered the parties' papers, the evidence cited therein
and oral argument, the Court construes the disputed phrases as set
forth below. In addition, the Court DENIES O2 Micro's motion for
summary adjudication; DENIES MPS and ASUSTeK's motion for summary
judgment of invalidity and non-infringement; GRANTS MPS and
ASUSTeK's motion for summary adjudication of the date of
conception; GRANTS MPS and ASUSTeK's motion for summary
adjudication of lack of willfulness; DENIES MPS and ASUSTeK's
Motion to Strike; OVERRULES as moot O2 Micro's evidentiary
objections;[2] and DENIES O2 Micro's motion to supplement the record.

---

[2] Along with its evidentiary objections, O2 Micro filed an
alternative motion to supplement the record, arguing that if the
Court were to admit the evidence to which it objected, the Court
should consider the evidence in context. The Court overrules the
(continued...)

2

The '382 patent is entitled "High-Efficiency Adaptive DC/AC Converter." It claims a direct current (DC) to alternating current (AC) power converter circuit. More specifically, the '382 patent claims a high efficiency controller circuit that regulates power delivered to a load using a zero-voltage-switching technique. Although the disclosed invention has general utility as a circuit for driving one or more cold cathode fluorescent lamps (CCFLs), it can be used with any load where high efficiency and precise power control is required.

The '382 patent is a continuation of O2 Micro's U.S. Patent No. 6,804,129 ('129 patent), which is a continuation of U.S. Patent No. 6,396,722 ('722 patent), which is a continuation of U.S. Patent No. 6,259,615 ('615 patent). The '382 and '722 patents claim priority based on U.S. Provisional Application No. 60/145,118, which was filed on July 22, 1999. The '722 patent was at issue in an earlier patent infringement case between O2 Micro and MPS and ASUSTeK, which was before this Court. See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., Nos. 04-2000, 06-2929 (N.D. Cal.). There, a jury found O2 Micro's asserted claims invalid because the invention was on sale in the United States before July 22, 1998 and because the claimed invention was obvious. The jury found that MPS and ASUSTeK did not establish invalidity based on anticipation or prior invention.

O2 Micro accuses MPS products of infringing Claims 1, 2, 4, 6,

---

[2](...continued)
objections as moot because it did not consider the evidence to which O2 Micro objected. Accordingly, the Court likewise denies O2 Micro's alternative motion as moot.

7, 8, 9, 11, 13 and 14 of the '382 patent.  It accuses MPS and ASUSTeK of willful infringement and seeks enhanced damages.

PROCEDURAL HISTORY

This case began as a declaratory judgment action by MPS against O2 Micro to establish that MPS's MP1009 inverter and related products do not infringe O2 Micro's U.S. Patent Nos. 6,856,519; 6,809,938; 6,900,993; 7,120,035; or the '382 patent. MPS also sought a declaration that these patents are invalid.  O2 Micro answered MPS's complaint and counterclaimed for infringement of its '382 patent, among others.  O2 Micro added as Counterclaim-Defendants ASUSTeK and BenQ Corporation, both of which allegedly sell devices that contain MPS's accused products.

In July, 2009, the Court dismissed with prejudice, pursuant to stipulation by O2 Micro, MPS and ASUSTeK, all claims and counterclaims except for those concerning the '382 patent.

DISCUSSION

I.  Claim Construction

A.  Legal Standard

The construction of a patent is a matter of law for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Accordingly, in construing disputed terms, the Court first looks to the words of the claims.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Generally, the Court

4

ascribes the words of a claim their ordinary and customary meaning. Id. The Federal Circuit instructs that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1313. Other claims of the patent in question can also assist in determining the meaning of a claim term. Id. at 1314. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Id.

The Federal Circuit also instructs that claims "must be read in view of the specification, of which they are a part." Id. at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). The specification must contain a description of the invention that is clear and complete enough to enable those of ordinary skill in the art to make and use it, and thus the specification is "always highly relevant" to the Court's claim construction analysis. Vitronics, 90 F.3d at 1582. "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." Id. In some cases, the specification may reveal that the patentee has given a special definition to a claim term that differs from its ordinary meaning; in such cases, "the inventor's lexicography controls." Phillips, 415 F.3d at 1316. The specification also may reveal the patentee's intentional disclaimer or disavowal of claim scope. "In that instance, as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the

United States District Court
For the Northern District of California

specification, is regarded as dispositive." Id. However, claims
are not limited to the preferred embodiment described in the
specification. See SRI Int'l v. Matsushita Elec. Corp. of Am., 775
F.2d 1107, 1121 (Fed. Cir. 1985) (en banc, plurality opinion).

While emphasizing the importance of intrinsic evidence in
claim construction, the Federal Circuit has authorized courts to
rely on extrinsic evidence, which consists of "all evidence
external to the patent and prosecution history, including expert
and inventor testimony, dictionaries, and learned treatises."
Phillips, 415 F.3d at 1317 (quoting Markman, 52 F.3d at 980).
While extrinsic evidence may be useful to the Court, it is less
significant than intrinsic evidence in determining the legally
operative meaning of claim language. Id.; see also C.R. Bard, Inc.
v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004).
Furthermore, extrinsic evidence is unlikely to lead to a reliable
interpretation of claim language unless considered in the context
of the intrinsic evidence. Phillips, 415 F.3d at 1319.

B.    Analysis

The parties dispute language contained in Claims 1 and 8 of
the '382 patent.  The relevant text from both claims describes:

> a timer circuit coupled to said first feedback signal
> line for providing a time-out sequence of a predetermined
> duration when said first voltage signal exceeds a
> predetermined threshold for said predetermined duration;
>
> and a protection circuit coupled to said timer circuit,
> said first switch and said second switch for shutting
> down said first switch and said second switch after said
> predetermined duration.

'382 patent, col.11:9-16 to col.12:37-44.  The parties identify
three clauses for construction: "a timer circuit . . . for
providing a time-out sequence of a predetermined duration;" "when

6

said first voltage signal exceeds a predetermined threshold for said predetermined duration;" and "shutting down said first switch and said second switch after said predetermined duration."

       1.   "a timer circuit . . . for providing a time-out sequence of a predetermined duration"

O2 Micro proposes that the Court adopt the following construction: "a circuit that provides a predetermined amount of time before shutdown occurs."  MPS, arguing that the timer circuit has no role in the circuit's shutdown process, proposes an alternative construction: "a circuit that measures a time period having a duration determined beforehand."

The claim language clearly provides that it is the protection circuit, not the timer circuit, that shuts down the power supply to the CCFL.  See '382 patent, col.11:13-16.  Thus, contrary to O2 Micro's argument, it is not necessary to include language calling for "shutdown" in the description of the timer circuit.  At the claim construction hearing, O2 Micro agreed that the "time-out sequence" is a time period.  Accordingly, the Court construes the language above as follows: "a timer circuit . . . that measures a time period having a duration determined beforehand."

       2.   "when said first voltage signal exceeds a predetermined threshold for said predetermined duration"

The parties' proposed constructions reflect their dispute on how the timer circuit functions.  O2 Micro maintains that the timer circuit measures only one predetermined time period and proposes the following construction: "when the first voltage signal exceeds

7

and continues to exceed[3] a predetermined threshold for the predetermined amount of time, shutdown occurs." In contrast, MPS and ASUSTeK assert that the timer circuit measures two time periods. In their view, the timer circuit first determines whether the voltage signal exceeds a predetermined threshold for a predetermined duration. If this condition is met, the timer circuit then waits a second time period, equal to the predetermined duration, before signaling to the protection circuit that shutdown should occur. MPS and ASUSTeK's proposed construction reflects this interpretation: "the time-out sequence begins after the first voltage signal has remained above a voltage value determined beforehand for a period of time equal to the duration of the time-out sequence."

The '382 patent's specification states,

> Preferably, a timer 64 is initiated once the OVP exceeds the threshold, thereby initiating a time-out sequence. The duration of the time-out is preferably designed according to the requirement of the loads (e.g., CCFLs of an LCD panel), but could alternately be set at some programmable value. Drive pulses are disabled once the time-out is reached, thus providing safe-operation output of the converter circuit.

'382 patent, col.8:64 to col.9:3. This claim language provides no support for MPS's assertion that the timer circuit measures two time periods before the drive pulses are shut down. On the contrary, the specification states that the drive pulses "are disabled once the time-out is reached," which suggests that the

---

[3] The phrase "and continues to exceed" was not included in O2 Micro's proposed construction in the parties' Joint Claim Construction and Prehearing Statement. (Docket No. 99.) O2 Micro adds the phrase in its Opening Claim Construction Brief, asserting that it is consistent with its claim construction position and is intended to clarify its position. MPS and ASUSTeK do not object to O2 Micro's new proffer.

"time-out" constitutes a single time period.  Because neither the specification nor any other intrinsic evidence indicates that the timer circuit measures two separate time periods, the Court rejects MPS's proposed construction and concludes that the timer circuit measures only one "predetermined duration."

Accordingly, the Court construes this language to mean: "when the above-mentioned first voltage signal exceeds and continues to exceed a voltage value determined beforehand for the above-mentioned time period."

> 3.    "shutting down said first switch and said second switch after said predetermined duration"

O2 Micro proposes that the Court construe this language as: "turning off the first and second switches after the predetermined duration has elapsed."  To express their interpretation that the timer circuit measures two time periods, MPS and ASUSTeK propose an alternative construction: "turning off the first and second switches when the time-out sequence has elapsed."  Because the Court concludes above that MPS and ASUSTeK's understanding is incorrect, the Court rejects their proposed construction. Accordingly, the Court construes the language to mean: "turning off the first and second switches after the above-mentioned time period has elapsed."

II.  Summary Judgment

A.  Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ.

P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986);

<u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir.

1987).

The moving party bears the burden of showing that there is no

material factual dispute.  Therefore, the court must regard as true

the opposing party's evidence, if supported by affidavits or other

evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815

F.2d at 1289.  The court must draw all reasonable inferences in

favor of the party against whom summary judgment is sought.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d

1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the

outcome of the case.  The substantive law will identify which facts

are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986).

Where the moving party does not bear the burden of proof on an

issue at trial, the moving party may discharge its burden of

production by either of two methods.  <u>Nissan Fire & Marine Ins.</u>

<u>Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir.

2000).

> The moving party may produce evidence negating an
> essential element of the nonmoving party's case, or,
> after suitable discovery, the moving party may show that
> the nonmoving party does not have enough evidence of an
> essential element of its claim or defense to carry its
> ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an

absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue.  UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if uncontroverted

11

United States District Court
For the Northern District of California

at trial, would entitle it to prevail on that issue.  <u>Id.</u>; <u>see also</u> <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's <u>prima facie</u> case.  <u>UA Local 343</u>, 48 F.3d at 1471.  The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible."  <u>Id.</u>  This standard does not change merely because resolution of the relevant issue is "highly fact specific."  <u>Id.</u>

    B.    Motions for Summary Adjudication and Summary Judgment Based on Collateral Estoppel

O2 Micro moves for summary adjudication and MPS and ASUSTeK move for summary judgment based on collateral estoppel with regard to issues litigated in the '722 patent infringement action. Collateral estoppel, or issue preclusion, bars re-litigation of issues when:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

<u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 (9th Cir. 2006).  However, "it is inappropriate to apply collateral estoppel when its effect would be unfair."  <u>Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.</u>, 873 F.2d 229, 234 (9th Cir. 1989).

    1.    O2 Micro's Motion for Summary Adjudication Based on Collateral Estoppel

O2 Micro asserts that MPS and ASUSTeK are collaterally estopped from re-litigating (1) the authenticity of schematics dated "Feb., 18, 1998" and (2) the invention date of subject matter

12

common to the '382 and '722 patents.  The Court has already rejected O2 Micro's efforts to bar re-litigation of the authenticity of the schematics.  Thus, for the reasons stated in its Order of October 29, 2009 Denying O2 Micro's Motion to Strike (Docket No. 229), the Court denies O2 Micro's motion for summary adjudication of this matter.

With regard to the invention date of the technology contained in the '382 patent, O2 Micro argues that the jury in the trial on the '722 patent necessarily decided that Dr. Yung-Lin Lin's conception and reduction to practice of his invention predated MPS's development of the MP1010.  In that case, MPS asserted that the MP1010 was developed by March 15, 1998.

As noted above, the jury concluded that the patent claims asserted in the '722 trial were invalid based on the on-sale bar and obviousness.  However, the jury rejected MPS's position that the asserted claims were invalid based on anticipation or prior invention.  In particular, the jury found that MPS did not meet its burden to show that it invented the subject matter covered by the relevant '722 claims before Dr. Lin.  Although the jury rejected MPS's claim of prior invention, the jury did not necessarily decide that Dr. Lin conceived the subject matter and reduced it to practice by February, 1998.  The jury's rejection of MPS's assertion merely shows that MPS did not meet its burden to establish the existence of prior art.  O2 Micro cannot transform MPS's failure to meet its burden into an affirmative finding by the jury on when the subject matter was conceived.

MPS and ASUSTeK note that, because O2 Micro offered false testimony by Dr. Lin and O2 Micro executive Adam Badgett in the

13

trial on the '722 patent, it would be unfair to apply collateral estoppel. O2 Micro does not dispute that inaccurate testimony was offered in the '722 trial. Thus, even if the jury had necessarily decided that Dr. Lin invented the common subject matter in February, 1998, the Court would not collaterally estop MPS and ASUSTeK from re-litigating this issue because the jury would have made its decision based on inaccurate testimony.

Accordingly, the Court denies O2 Micro's motion for summary adjudication of the date on which the subject matter common to the '382 and '722 patents was conceived and reduced to practice.

2.    MPS and ASUSTeK's Motion for Summary Judgment of Invalidity Based on Collateral Estoppel

MPS and ASUSTeK move for summary judgment that the asserted claims of the '382 patent are invalid based on the jury's determination of the invalidity of the asserted claims in the trial on the '722 patent.

Each claim of a patent is presumed valid independently of the validity of other claims. 35 U.S.C. § 282. Thus, questions of invalidity generally require a court to consider patent claims individually. See Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1370-71 (Fed. Cir. 2003). As MPS and ASUSTeK concede, the '722 trial did not involve claims for "(1) a capacitor divider, (2) a first feedback signal line coupled to the capacitor divider, (3) a timer circuit coupled to the first feedback signal line, or (4) a protection circuit coupled to the timer circuit," which are asserted here. MPS and ASUSTeK's Opening Br. at 15. Thus, the jury did not necessarily decide the invalidity of the claims asserted in this case. The Court accordingly denies MPS and

14

ASUSTeK's motion for summary judgment of invalidity based on collateral estoppel.

C. MPS and ASUSTeK's Motion for Summary Judgment of Non-infringement

MPS and ASUSTeK assert that they are entitled to summary judgment of non-infringement because the timer circuit identified in the accused products does not rely on a first voltage signal that "exceeds and continues to exceed a voltage value determined beforehand for the above-mentioned time period," as provided for in the '382 patent's claim limitations.  They maintain that a phenomenon called "squegging" occurs in MPS's devices, which causes the voltage signal to "periodically and consistently" fall within the threshold range during the predetermined duration.  Dunlavey Decl., Ex. N at 35.  O2 Micro agrees, stating that, in the accused products, "the instantaneous voltage and some of the peaks of the AC voltage . . . may fall within the predetermined threshold . . . ."  O2 Micro Reply Br. at 17;[4] <u>see also</u> Dunlavey Decl., Ex. M at 164:3-9 (deposition of O2 Micro's expert Richard Flasck, stating that the accused devices "squeg" and that the voltage signal varies "on an instantaneous basis").  O2 Micro maintains that the products nevertheless infringe because "the AC voltage continues to periodically cycle back to peak values that exceed the predetermined threshold, thereby 'continuing to exceed' the threshold for the predetermined duration."  O2 Micro Reply Br. at

---

[4] MPS and ASUSTeK move to strike pages 16-26 of O2 Micro's Reply Brief, arguing that it exceeds the fifteen-page limit for reply briefs.  However, because O2 Micro's brief contains its reply in support of its motions and its opposition to MPS and ASUSTeK cross-motions, the Court denies MPS and ASUSTeK's motion to strike pages 16-26 of O2 Micro's Reply Brief.

17.  Because O2 Micro must prove infringement at trial, it bears the burden of creating a genuine issue of material fact with respect to infringement in order to avoid summary judgment.

O2 Micro's expert, Richard Flasck, asserts that, even though the voltage signal in the accused products does not exceed the threshold value for each cycle, a person having ordinary skill in the art "would understand that determining 'when said first voltage signal exceeds a predetermined threshold for said predetermined duration' requires evaluating the time-varying AC waveform over time, using the peak-to-peak values."  Flasck Reply Decl. ¶ 4.[5]  He asserts that it "is not correct to measure the voltage value at a single instant or a single cycle of the waveform."  Flasck Reply Decl. ¶ 4.  In other words, Mr. Flasck asserts that a skilled artisan would find that the voltage signal in the accused products meets the "exceeds and continues to exceed" limitation because, over a given period of time, the signal, as measured by the peak-to-peak values of the sinusoidal AC voltage waveform, exceeds the threshold.  Assuming what he says is true, "squegging" would not preclude a jury from finding that the accused products infringe the '382 patent.

Mr. Flasck's declaration creates a triable issue on non-infringement.  There is a genuine issue for trial, albeit narrow, on whether a person having ordinary skill in the art would find

_____

[5]  MPS and ASUSTeK move to strike this paragraph of Mr. Flasck's Reply Declaration, asserting that it constitutes previously undisclosed expert opinion.  See Fed. R. Civ. P. 26(a)(2).  However, Mr. Flasck appears to have disclosed this opinion in his August 31, 2009 deposition.  Accordingly, the Court denies MPS and ASUSTeK's motion to strike paragraph four of the Flasck Reply Declaration.

that the accused products meet the '382 patent's claim limitations,
even though -- as O2 Micro admits -- MPS's products "squeg."
Accordingly, the Court denies MPS and ASUSTeK's motion for summary
judgment of non-infringement.

> D.   MPS and ASUSTeK's Motion for Summary Adjudication that No
>      Conception or Diligence Occurred Prior to July 22, 1999

MPS and ASUSTeK assert that they are entitled to summary
adjudication[6] that the earliest invention date for the '382 patent
is July 22, 1999, the date that Dr. Lin filed U.S. Provisional
Application No. 60/145,118.  They assert that O2 Micro fails to
corroborate Dr. Lin's testimony that he invented it earlier.[7]  At
trial, O2 Micro would bear the burden of proof of an earlier
priority date if MPS and ASUSTeK make a <u>prima facie</u> claim of
invalidity based on prior art.  <u>See</u> <u>PowerOasis, Inc. v. T-Mobile</u>
<u>USA, Inc.</u>, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008).

To establish a priority date, a patentee may demonstrate

---

[6] In its Opening Brief, MPS and ASUSTeK denominated this
matter a motion for summary judgment.  However, a priority "date in
and of itself is not a claim or defense on which summary judgment
can be granted . . . ."  <u>Star Scientific, Inc. v. R.J. Reynolds</u>
<u>Tobacco Co.</u>, 537 F.3d 1357, 1365 n.6 (Fed. Cir. 2008).  MPS and
ASUSTeK correctly entitled their requested relief in their Surreply
Brief, stating that they were seeking summary adjudication on this
issue.

[7] O2 Micro incorrectly asserts that, because MPS and ASUSTeK
have failed to establish a <u>prima facie</u> case of invalidity under 35
U.S.C. § 102(g), it does not bear the burden to present evidence to
establish an invention date earlier than July 22, 1999.  However,
MPS and ASUSTeK are not moving for summary judgment of invalidity,
a defense for which they would bear the burden of proof at trial.
Instead, they move for summary adjudication on the invention date
of the '382 patent, which is an element of an invalidity defense.
Pursuant to Federal Rule of Civil Procedure 56(d), the Court may
deem certain facts established before trial to narrow the issues
that must be litigated.  <u>Lies v. Farrell Lines, Inc.</u>, 641 F.2d 765,
769 n.3 (9th Cir. 1981); <u>see also</u> <u>Rambus Inc v. Samsung Elecs. Co.,</u>
<u>Ltd.</u>, 2008 WL 3875397, at *3 (N.D. Cal.).

"conception coupled with reasonable diligence in reducing the invention to practice . . . ." Singh v. Brake, 317 F.3d 1334, 1340 (Fed. Cir. 2003). "A conception must encompass all limitations of the claimed invention and is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." Id. When a putative inventor's oral testimony is used to demonstrate conception, corroborating evidence must be provided, preferably in the form of a contemporaneous disclosure. Id.; Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994).

O2 Micro asserts that "because the requirement of corroboration is, at bottom, an issue of credibility," this matter is not proper for summary adjudication. O2 Micro Reply Br. at 22. However, controlling precedent holds otherwise. An inventor "'must provide independent corroborating evidence in addition to his own statements and documents.'" Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1375 (Fed. Cir. 2009) (quoting Hahn v. Wong, 892 F.2d 1028, 1032 (Fed. Cir. 1989)). Thus, in addition to providing the testimony of the inventor, whose credibility can be judged by a jury, a patentee must offer independent corroborating evidence to establish a priority date earlier than the application filing date.

O2 Micro asserts that Dr. Lin's schematics corroborate his claim that he conceived the subject matter of the '382 patent on February 18, 1998. However, the schematics do not constitute independent corroborating evidence because there is no evidence that anyone other than Dr. Lin himself dated the schematics. O2

18

Micro offers no other evidence that Dr. Lin conceived of the invention prior to July 22, 1999. Furthermore, O2 Micro offers no evidence that Dr. Lin was diligent in reducing his invention to practice prior to July, 1999.

Because O2 Micro fails to provide any independent corroborating evidence, the Court grants MPS and ASUSTeK's motion for summary adjudication that the invention claimed by the '382 patent was not conceived or diligently reduced to practice before July 22, 1999.

> E.   MPS and ASUSTeK's Motion for Summary Adjudication of Lack of Willfulness

MPS and ASUSTeK assert that they are entitled to summary adjudication on O2 Micro's claim that it committed willful infringement warranting enhanced damages.

To demonstrate that a defendant willfully infringed, a patentee must show at least "objective recklessness." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Proving objective recklessness entails a two-step process. First, a patentee must prove by "clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Id. Once this threshold showing is made, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."

MPS and ASUSTeK assert that, because O2 Micro did not move for a preliminary injunction in this case, it is barred from pursuing a claim for willful infringement and enhanced damages. They cite

<u>Seagate</u>, which states that a "patentee who does not attempt to stop an accused infringer's activities [through a preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." 497 F.3d at 1374. However, <u>Seagate</u> does not state that the failure to seek a preliminary injunction bars recovery based on pre-filing conduct. <u>See</u> <u>Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.</u>, 592 F. Supp. 2d 1208, 1227 (N.D. Cal. 2008). As O2 Micro notes, its claim for willful infringement is not limited to post-filing conduct. By failing to seek a preliminary injunction against further infringement, O2 Micro failed to mitigate its losses, but this result does not bar its willfulness claim altogether.

Nevertheless, O2 Micro fails to create a triable issue on willful infringement and enhanced damages. Because it carries the burden to prove these issues, it must proffer evidence concerning the threshold showing of recklessness, described above. It does not. Instead, O2 Micro argues that the "inherent weakness of [Counterclaim-Defendants'] claim construction positions and non-infringement defenses speaks volumes about the objectively high risk of infringement in this action." O2 Micro Reply Br. at 25. This conclusory argument is not sufficient to meet O2 Micro's burden.

Accordingly, the Court summarily adjudicates that, if MPS and ASUSTeK infringed, they did not do so willfully.

III. O2 Micro's Evidentiary Objections

O2 Micro objects to evidence submitted by MPS and ASUSTeK along with their surreply brief. If the Court were to admit MPS and ASUSTeK's evidence, O2 Micro moves, in the alternative, to

20

1  supplement the record.

2      In rendering its decision, the Court did not rely on the
3  evidence to which O2 Micro objected.  Accordingly, its objections
4  are overruled as moot and the Court denies as moot O2 Micro's
5  alternative motion to supplement the record.

6  IV.  O2 Micro's Second Motion to Supplement the Record

7      One week before the hearing on these motions, O2 Micro filed
8  another motion for leave to supplement the record with evidence
9  from the October, 2009 hearings in the parallel ITC proceeding.
10 This material appears to support O2 Micro's opposition to MPS and
11 ASUSTeK's summary judgment motion of non-infringement.  O2 Micro
12 moves, in the alternative, to re-open discovery pursuant to Federal
13 Rule of Civil Procedure 56(f).

14     Because the existing record is sufficient to deny MPS and
15 ASUSTeK's summary judgment motion, the Court denies O2 Micro's
16 motion for leave to supplement the record and its alternative
17 motion to re-open discovery.

18                         CONCLUSION

19     For the foregoing reasons, the Court construes the disputed
20 claim language in the manner explained above.  The Court DENIES O2
21 Micro's motion for summary adjudication (Docket No. 157); DENIES
22 MPS and ASUSTeK's Motion for summary judgment of invalidity and
23 non-infringement (Docket No. 233); GRANTS MPS and ASUSTeK's motion
24 for summary adjudication that no conception or diligence occurred
25 prior to July 22, 1999 (Docket No. 233); GRANTS MPS and ASUSTEK's
26 motion for summary adjudication of lack of willfulness (Docket No.
27 233); DENIES MPS and ASUSTeK's Motion to Strike (Docket No. 233);
28 OVERRULES as moot O2 Micro's objections to evidence submitted by

MPS and ASUSTeK in support of their surreply brief and DENIES as moot its alternative motion to supplement the record (Docket No. 252); and DENIES O2 Micro's second motion for leave to supplement the record (Docket No. 250).

A final pretrial conference is scheduled for June 29, 2010 at 2:00 p.m.  Trial is scheduled to begin on July 12, 2010 at 8:30 a.m.

IT IS SO ORDERED.

Dated: February 16, 2010

_____
CLAUDIA WILKEN
United States District Judge

22