**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7           IN THE UNITED STATES DISTRICT COURT

8

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

MONOLITHIC POWER SYSTEMS, INC.,

11        Plaintiff,

12     v.

13  O2 MICRO INTERNATIONAL LIMITED,

14        Defendant.

15  _____/

16  O2 MICRO INTERNATIONAL LIMITED,

17        Counterclaimant,

18     v.

19  MONOLITHIC POWER SYSTEMS, INC.;
    ASUSTEK COMPUTER INC.; ASUSTEK
20  COMPUTER INTERNATIONAL AMERICA; BENQ
    CORPORATION; and BENQ AMERICA CORP.,

21

22        Counterclaim-Defendants.

23  _____/

No. C 08-04567 CW

ORDER GRANTING IN
PART MPS AND
ASUSTEK'S MOTION FOR
ATTORNEYS' FEES AND
NON-TAXABLE COSTS,
GRANTING MPS AND
ASUSTEK'S MOTION FOR
REVIEW OF THE
CLERK'S TAXATION OF
COSTS AND GRANTING
IN PART AND DENYING
IN PART O2 MICRO'S
MOTION FOR REVIEW OF
THE CLERK'S TAXATION
OF COSTS
(Docket Nos. 410,
438 and 439)

24        Plaintiff and Counterclaim-Defendant Monolithic Power Systems,

25  Inc. (MPS) and Counterclaim-Defendants ASUSTeK Computer, Inc., and

26  ASUS Computer International (collectively, ASUSTeK) move for an

27  award of reasonable attorneys' fees and non-taxable costs.

28  Defendant and Counterclaimant O2 Micro International Limited

opposes MPS and ASUSTeK's motion.   MPS and ASUSTeK also move for a review of the Clerk's taxation of their costs against O2 Micro.   O2 Micro opposes MPS and ASUSTeK's motion for review and seeks review, for other reasons, of the Clerk's taxation of MPS and ASUSTeK's costs against it.   MPS and ASUSTeK oppose O2 Micro's motion for review.   The motions were taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS in part MPS and ASUSTeK's motion for attorneys' fees and non-statutory costs, GRANTS MPS and ASUSTeK's motion for review of their costs against O2 Micro and GRANTS in part and DENIES in part O2 Micro's motion for review of the Clerk's taxation of MPS and ASUSTeK's costs against it.

BACKGROUND

I.   Previous Litigation

Since 2001, O2 Micro and MPS, or MPS customers, have litigated before this Court five lawsuits in which O2 Micro asserted patent infringement claims.[1]   This lawsuit was the fifth.

In October, 2001, O2 Micro filed suit against MPS, alleging infringement of its U.S. Patent No. 6,259,615 ('615 patent).   <u>See generally</u> <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys, Inc.</u>, Case No. C 01-3995 CW.   The Court granted summary judgment of noninfringement in favor of MPS, which was affirmed by the Federal

---

[1]   In November, 2000, O2 Micro filed suit against MPS, seeking declarations that MPS's U.S. Patent Nos. 6,144,814 ('814 patent) and 6,316,881 ('881 patent) were invalid and not infringed by O2 Micro's products.   <u>See generally</u> <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys, Inc.</u>, Case No. C 00-4071 CW.   In 2005, a jury concluded that O2 Micro did not infringe the asserted claims of the patents-at-issue and that the patents were invalid as anticipated by prior art.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Circuit.  See generally O2 Micro Int'l Ltd. v. Monolithic Power Sys, Inc., 467 F.3d 1355 (Fed. Cir. 2006).

In May, 2004, MPS filed a declaratory judgment action against O2 Micro based on a patent infringement lawsuit O2 Micro filed in the Eastern District of Texas against an MPS customer.  See generally Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., Case No. C 04-2000 CW (N.D. Cal.).  MPS sought declarations that O2 Micro's U.S. Patent No. 6,396,722 ('722 patent) was not infringed and invalid.  O2 Micro counterclaimed for infringement.  During the litigation, O2 Micro proffered schematics bearing the text, "Feb., 18, 1998 [sic]," to corroborate its assertion that O2 Micro engineer Dr. Yung-Lin Lin conceived of subject matter claimed in the '722 patent before MPS's development of its MP1010 product, which MPS asserted rendered the '722 patent invalid.  At trial, Lin testified as follows:

> Q: There's a printed date in the title block of February 18, 1998.  What does that date indicate, Dr. Lin?
>
> A: That's the program date, which is when the file, the circuit diagram generated.  That computer automatically print the date when I save the file.

Dunlavey Decl., Ex. 24, at 570:14-19.  O2 Micro executive Adam Badgett echoed Lin's claim that the software automatically inserted the "Feb., 18, 1998" text.  Badgett testified at trial as follows:

> Q: These have a date in the title block of February 18th 1998.  Can you explain to us how that date is put on these documents?
>
> A: This date is automatically inserted by the software program.

Id., Ex. 1, at 748:18-22.  A jury found the '722 patent invalid based on the on-sale bar and obviousness.

In October, 2004, O2 Micro filed a lawsuit against two MPS customers in the Eastern District of Texas, accusing them of infringing its U.S. Patent No. 6,804,129 ('129 patent).  The case was subsequently transferred to this district and consolidated with the '722 patent action discussed above.  See generally O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., Case No. C 06-2929 CW (N.D. Cal.).  Thereafter, O2 Micro stipulated to the dismissal of the infringement claims and covenanted not to sue MPS and its two customers for infringement of the '129 patent.

In May, 2007, MPS filed a declaratory judgment action against O2 Micro based on a patent infringement lawsuit O2 Micro filed in the Eastern District of Texas against another MPS customer.  See generally Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., Case No. C 07-2363 CW (N.D. Cal.).  MPS sought declarations that the '129 patent was invalid and not infringed by MPS products.  O2 Micro counterclaimed for infringement.  After the Court denied O2 Micro's two motions to dismiss for lack of subject matter jurisdiction, O2 Micro stipulated to the dismissal of an infringement counterclaim and covenanted not to sue MPS and its customers for infringement of the '129 patent.

II.   Current Litigation

MPS brought the current declaratory judgment action, which initially involved O2 Micro's U.S. Patent Nos. 6,856,519 ('519 patent), 6,809,938 ('938 patent), 6,900,993 ('993 patent) and 7,120,035 ('035 patent) (collectively, '519 patent family).  Later, MPS amended its complaint to include U.S. Patent No. 7,417,382 ('382 patent), which was part of the same family as the '722 patent.  MPS sought declarations of non-infringement and invalidity

4

with respect to these patents.

After MPS initiated this lawsuit, O2 Micro filed a complaint in the International Trade Commission (ITC), alleging infringement of these patents by MPS and its customers, including ASUSTeK, BenQ Corporation and BenQ America Corp. (collectively, BenQ).[2]  See generally In the Matter of Certain Cold Cathode Flourescent Lamp ("CCFL") Inverter Circuits and Products Containing Same, Inv. No. 337-TA-666.  O2 Micro moved to stay MPS's lawsuit pending completion of the ITC proceeding.  The Court denied O2 Micro's motion.  To avoid duplication and a waste of resources, the Court ordered that all discovery in the ITC proceeding would apply in this action.

In this lawsuit, O2 Micro counterclaimed against MPS and BenQ for infringement of the '519 patent family and counterclaimed against MPS, ASUSTeK and BenQ for infringement of the '382 patent. On June 10, 2009, O2 Micro and BenQ stipulated to dismiss the infringement claims asserted against BenQ.  Shortly thereafter, O2 Micro dismissed all claims concerning infringement of the '519 patent family, both in this case and in the ITC proceedings.  O2 Micro also covenanted not to sue MPS or its customers for past or future infringement of the '519 patent family by certain MPS products.  At this point, only claims concerning the '382 patent remained in this action.

Because they were part of the same family, the '382 patent claimed subject matter claimed by the '722 patent.  Also, like the

_____

[2] Although MPS filed its lawsuit in October, 2008, it did not serve O2 Micro with process until January, 2009.  However, O2 Micro learned of the lawsuit during the intervening period.  Tr. of March 3, 2009 Hrg. 8:10.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

'722 patent, the '382 patent claimed priority based on Provisional Application No. 60/145,118, which was filed on July 22, 1999.  To defend against MPS and ASUSTeK's assertions of invalidity based on prior art, O2 Micro again relied on Lin's "Feb., 18, 1998" schematics to establish an invention date before the date the provisional application was filed.

Throughout the litigation, O2 Micro asserted, as it had in the trial regarding the '722 patent, that Lin's software automatically inserted the "Feb., 18, 1998" date in the schematics.  On May 11, 2009, in response to an interrogatory regarding the schematics, O2 Micro stated, "Dr. Yung-Lin Lin used a PSPICE simulation program on February 18, 1998 to create the identified document, which was printed out.  The program automatically provided a date stamp on the day it was created."  Dunlavey Decl., Ex. 26, at 6.  Then, on July 21, 2009, O2 Micro's Rule 30(b)(6) designee Stephen Krems testified that the schematics were created using OrCAD Capture, which was "the only software ever seen at O2 Micro," and that the software "automatically put in" the "Feb., 18, 1998" text.  Id., Ex. 27, 67:4-5, 68:19.  On July 23, 2009, in interrogatory responses, O2 Micro repeated that the "program automatically provided a date stamp on the day the" schematics were created and referred to Krems's testimony.  Id., Ex. 28, at 6-7.  O2 Micro, however, acknowledged that it did "not have information as to who else saw the" schematics between the alleged February 18, 1998 conception date and June 24, 1999.  Id. at 8.

On July 31, 2009, MPS served O2 Micro with the report of its expert, Dr. Marc E. Herniter.  MPS had retained Dr. Herniter to testify regarding the functions of relevant software packages,

United States District Court

For the Northern District of California

including PSpice and OrCAD, and to address whether the "Feb., 18, 1998" text in Lin's schematics was automatically generated by software or manually entered by a user.  Dr. Herniter concluded that the schematics were created using PSpice, not OrCAD as Krems had represented.  Further, Dr. Herniter opined that PSpice "did not automatically provide a date stamp on the day the schematic diagrams were created" and that the text, which clearly contained a typographical error, was manually entered.  Dunlavey Decl., Ex. 30 ¶ 26.  Finally, Dr. Herniter noted that, on some of the other schematics proffered by O2 Micro that were attributed to Lin, the directory path of the file, which appeared in the header of the printouts, had been redacted.  On the printouts in which the header did appear, the directory path indicated that the files had been stored in a file folder named "MPS."  Id. ¶¶ 60-62.  Lin testified that "MPS" referred to "multiple power systems" or "multiple power supplies," not Monolithic Power Systems.  Id., Ex. 15, at 165:16-17.

After receiving Dr. Herniter's report, O2 Micro investigated the matter.  On August 24, 2009, O2 Micro supplemented its interrogatory responses, stating that Lin used PSpice to create the schematics, contrary to Krems's testimony and its July 23 interrogatory responses.  With regard to the software's date function, O2 Micro stated,

> When version 6.2j of PSpice Schematics is used to create a new schematic, the program automatically populates the "date" field of "titlblk" with the default date January 1, 2000, and will print that date in the title block of the schematic unless changed by the user.  The program automatically prints the date that has been entered into the "date" field of "titleblk" using the Attributes edit function.  The date in the title block remains the same until it is edited.  If the "date" attribute was changed

7

using the edit function on the date the document was created and the document was printed on that date, the software would automatically print that date in the title block at the lower right hand corner of the schematic.

Dunlavey Decl., Ex. 29, at 7-8.  Approximately one week later, O2 Micro moved to strike Dr. Herniter's report, asserting that his opinion was irrelevant because he did not offer any testimony regarding any disputed issue.  O2 Micro asserted that it agreed that the "'Feb., 18, 1998' date was printed by the simulation software on the day the schematics were created to the extent the information was entered by the user into the 'date' attribute of the file."  O2 Micro's Mot. to Strike Herniter Expert Report 3-4.  O2 Micro also argued that the doctrine of collateral estoppel precluded MPS and ASUSTeK from re-litigating the "authenticity of the schematics" because this issues was settled in the '722 litigation.  Id. at 6.  The Court denied O2 Micro's motion to strike.

On October 20, 2009, Lin admitted in testimony in the parallel ITC proceeding that he entered the "Feb., 18, 1998" text on his schematics and that his assertion that software automatically inserted the date was incorrect.

On February 16, 2010, the Court construed claims of the '382 patent and ruled on the parties' motions for summary judgment and summary adjudication.  The Court denied O2 Micro's motion for summary adjudication of the authenticity of the schematics dated "Feb., 18, 1998," which repeated arguments raised in O2 Micro's motion to strike Dr. Herniter's report.  The Court also denied O2 Micro's motion for summary adjudication that Lin conceived of subject matter claimed in the '382 patent in February, 1998.

United States District Court
For the Northern District of California

After the parties completed their briefing for the pretrial conference, but approximately one week before the conference was to be held, O2 Micro filed a motion to dismiss with prejudice all claims concerning the '382 patent. Similar to what it had done with respect to the '519 patent family, O2 Micro covenanted not to sue MPS and its customers for past and future infringement of the '382 patent by certain MPS products. The Court granted O2 Micro's motion and dismissed all claims and counterclaims with prejudice for lack of subject matter jurisdiction. The Clerk entered judgment accordingly.

MPS and ASUSTeK filed a timely bill of costs. On August 9, 2010, the Clerk taxed costs against O2 Micro in the amount of $429,693.31, which was the sum of $2,130.26 for service of subpoenas; $18,169.37 for deposition transcripts; $392,171.73 for exemplification and copying costs; and $17,221.95 for the compensation of court-appointed experts. The Clerk had disallowed $70.00 from MPS and ASUSTeK's request for subpoena costs and $96,624.28 from their request for exemplification and copying costs. Am. Bill of Costs.

DISCUSSION

I.    MPS and ASUSTeK's Motion for Attorneys' Fees and Non-Statutory Costs

In patent infringement actions, courts "may award reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. O2 Micro does not dispute that MPS and ASUSTeK were prevailing parties in this action.

To determine whether attorneys' fees are warranted, a court undertakes a two-step process: (1) the court considers whether

9

clear and convincing evidence supports a finding that a case is exceptional and, if so, (2) the court then decides whether it should exercise its discretion to award attorneys' fees.  <u>Wedgetail Ltd. v. Huddleston Deluxe, Inc.</u>, 576 F.3d 1302, 1304 (Fed. Cir. 2009).

A.   Exceptionality

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions."  <u>Brooks Furniture Mfg., Inc. v. Dutallier Int'l, Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  In evaluating whether a case is exceptional, a court must consider "the totality of the circumstances."  <u>Yamanouchi Pharm. Co. Ltd. v. Danbury Pharmacal, Inc.</u>, 231 F.3d 1339, 1347 (Fed. Cir. 2000).

Here, MPS and ASUSTeK assert that O2 Micro engaged in an abusive and vexatious litigation strategy, inequitable conduct before the Patent and Trademark Office (PTO) and litigation misconduct.  They also assert that this litigation was baseless.

As explained below, the Court finds this case exceptional because O2 Micro engaged in a vexatious litigation strategy and litigation misconduct.  Because these bases sufficiently support an exceptionality finding, the Court does not consider whether O2 Micro committed inequitable acts before the PTO or filed baseless litigation.

1.   Vexatious Litigation Strategy

As noted above, O2 Micro and MPS, which are competitors, have

litigated a series of patent cases before this Court.  The Court is familiar with the parties, the technology and the patents-at-issue.

In three of the five cases discussed above, O2 Micro undertook a strategy by which it sued MPS customers, prompting MPS to file declaratory judgment actions in this Court.  Thereafter, in each of the three cases, O2 Micro covenanted not to sue, thereby enabling it to avoid litigation on the validity of its patents.  However, this only occurred after substantial litigation had taken place. In this case, for instance, O2 Micro sought to dismiss its counterclaims of infringement, based on a covenant not to sue, only after MPS and ASUSTeK completed their filings for the parties' impending final pretrial conference.  This wasted MPS's, ASUSTeK's and the Court's resources.  Settlement and dismissal of claims on the eve of trial is not uncommon and, indeed, is preferable to no settlement.  However, O2 Micro's conduct takes on a different hue when viewed in light of its competitive relationship with MPS and its resort to this litigation strategy on multiple occasions in its cases before this Court.

O2 Micro asserts that most of the actions in which the parties were involved were initiated by MPS.  This is false.  Including the ITC investigation, precipitated by O2 Micro's complaint filed after MPS initiated this lawsuit, the parties have initiated an equal number of proceedings involving infringement of O2 Micro's patents: O2 Micro initiated three coercive proceedings against MPS or its customers, and MPS initiated three declaratory judgment actions against O2 Micro.  Further, MPS's actions were prompted by O2

United States District Court
For the Northern District of California

1  Micro's patent enforcement activity against MPS customers.[3]   O2

2  Micro's representation that it was a passive party, haled into this

3  Court only because of MPS's filing of declaratory judgment actions,

4  is not true.

5      Based on its knowledge of the series of cases discussed above,

6  the Court finds that O2 Micro engaged in a vexatious litigation

7  strategy that supports finding this case to be exceptional.

8          2.   Litigation Misconduct

9      "Litigation misconduct and unprofessional behavior are

10 relevant to the award of attorney fees, and may suffice to make a

11 case exceptional."  <u>Taltech Ltd. v. Esquel Enters. Ltd.</u>, 604 F.3d

12 1324, 1329 (Fed. Cir. 2010) (citation and internal quotation marks

13 omitted).

14     MPS and ASUSTeK assert that this case is exceptional because

15 O2 Micro engaged in litigation misconduct through its

16 representations concerning how Lin's schematics came to be dated

17 "Feb., 18, 1998" and its insistence, in two separate motions, that

18 the authenticity of these schematics could not be re-litigated.

19 Further, as noted above, O2 Micro sought summary adjudication that

20 Lin invented subject matter claimed by the '382 patent in February,

21 1998.  This conduct, along with O2 Micro's vexatious litigation

22 strategy, supports finding this case to be exceptional.

23     Notwithstanding the clear typographical error in the "Feb.,

24 18, 1998" date block, O2 Micro insisted in the '722 trial, in the

25 _____

26     [3] O2 Micro notes that, in this case, no evidence has been
   offered suggesting that it was attempting to enforce its patents
   against MPS customers, suggesting that this action was not
27 necessary.  However, O2 Micro did not move to dismiss this action
   for lack of subject matter jurisdiction and, as a result, MPS was
28 not required to proffer such evidence.

ITC investigation and in this litigation that computer software, not Lin, inserted this text.  O2 Micro presented three witnesses who testified that the text was computer-generated and offered verified interrogatory responses stating the same.  O2 Micro admits that it did not perform its own investigation into the veracity of these representations, despite their materiality, until after MPS served it with Dr. Herniter's report.  And, after concluding based on its own investigation "that the 'Feb., 18, 1998' date must have been manually inserted," O2 Micro Opp'n to MPS/ASUS Fee Mot. 12:26, O2 Micro supplemented its interrogatory responses with a convoluted paragraph in which it obfuscated the fact that Lin had entered the date.

O2 Micro then filed baseless motions, prolonging litigation on the "Feb., 18, 1998" schematics.  O2 Micro moved to strike Dr. Herniter's report, arguing that his opinions were irrelevant because it agreed that "the 'Feb., 18, 1998' date was printed by the simulation software on the day the schematics were created to the extent the information was entered by the user into the 'date' attribute."  O2 Micro's Mot. to Strike Herniter Expert Report 3:26-27.  Thus, O2 Micro argued, "the parties agree on this point, eliminating any need for expert testimony on the subject." Id. 4:1-2.  O2 Micro then asserted that the doctrine of collateral estoppel precluded MPS and ASUSTeK from re-litigating this issue, implicitly suggesting that MPS and ASUSTeK had a full and fair opportunity to litigate the "Feb., 18, 1998" date in the '722 trial, even though Lin and Badgett had offered false testimony.  O2 Micro repeated these arguments in a motion for summary adjudication that Lin conceived of the subject matter claimed by the '382 patent

United States District Court
For the Northern District of California

1   in February, 1998.

2       Rather than straightforwardly admit the truth, O2 Micro

3   dissembled and sought, through motion practice, to mask its proffer

4   of false testimony.  This constitutes litigation misconduct that,

5   along with O2 Micro's vexatious litigation strategy, warrants

6   designating this case exceptional.

7       B.   Attorneys' Fees and Non-Statutory Costs

8       Based on O2 Micro's vexatious litigation strategy, litigation

9   misconduct and unprofessional behavior, MPS and ASUSTeK are

10  entitled to reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

11      The Court, however, reserves its decision on the amount of

12  attorneys' fees to which MPS and ASUSTeK are entitled.  MPS and

13  ASUSTeK seek $13,507,643.50 in attorneys' fees.  In support of this

14  request, MPS and ASUSTeK proffer a "high-level 'Statement of

15  Services Rendered,'" Flagel Decl. ¶ 3, which does not indicate the

16  tasks for which hours were billed.  This is not sufficient for the

17  Court to evaluate their fee request.  Further, MPS and ASUSTeK

18  represent that their fee request may include some amounts that were

19  taxed as costs, which makes double recovery possible.

20      Within twenty-eight days of the date of this Order, the

21  parties shall meet and confer to attempt to resolve any disputed

22  issues concerning the amount in light of this ruling.  If the

23  parties cannot reach an agreement, MPS and ASUSTeK shall file

24  documents supporting its fee request.  Such documentation must

25  include detailed records from which the Court can determine the

26  nature of the tasks billed.  Additionally, the fees request shall

27  not contain any amounts for costs taxed.

28

14

II.  Motions for Review of the Clerk's Taxation of Costs Against O2 Micro

Federal Rule of Civil Procedure 54(d)(1) authorizes the Court to grant the prevailing party its costs.  The determination of taxable costs is governed by 28 U.S.C. § 1920 and, more particularly, Civil L.R. 54-3, which specifically enumerates the standards for costs recoverable in this District.  This Court may only tax costs explicitly authorized by § 1920.  See Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 177-78 (9th Cir. 1990); see also Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442 (1987).

The parties seek review of the Clerk's taxation of MPS and ASUSTeK's costs against O2 Micro.  MPS and ASUSTeK object only to the Clerk's disallowance of $96,624.28 for deposition expenses incurred in the ITC investigation.  O2 Micro objects to the Clerk's taxation of costs on several grounds: (1) costs for documents produced in the ITC proceeding should not be recovered in this case; (2) costs taxed for exemplification and copying costs include duplicate entries and charges for non-taxable services; (3) costs taxed for deposition transcripts include amounts for multiple copies and non-taxable services; and (4) costs taxed for service of subpoenas include amounts for third parties subpoenaed but not deposed.

A.  Costs Attributable to Discovery Obtained for Use in This Action and the ITC Proceeding

O2 Micro attributes a large portion of MPS and ASUSTeK's costs to the ITC proceeding and argues that such costs should be disallowed because they did not arise in this case.  This broad objection is not well-taken.  As noted above, in the interest of

15

United States District Court

For the Northern District of California

efficiency, the Court ordered all discovery obtained through the ITC parallel investigation to pertain to this case, and vice versa. Had O2 Micro not precipitated the ITC investigation, the same discovery-related costs would have been incurred in this litigation.  Indeed, O2 Micro does not dispute that it used -- in this case -- discovery obtained in the ITC proceedings.  In seeking to stay this case in favor of the ITC investigation, O2 Micro acknowledged the overlap between the two proceedings, stating that "all of the patents that are issue in this case are certainly at issue in the ITC."  Tr. of Mar. 3, 2009 Hrg. 7:18-19.  Despite now claiming ignorance, O2 Micro was on notice that discovery obtained through the ITC proceeding was deemed to apply to this action.  O2 Micro offers no authority that bars recovery of discovery-related costs simply because they related to discovery obtained through an ITC proceeding.  Accordingly, subject to exceptions discussed below, MPS and ASUSTeK may recover deposition, exemplification and copying costs, incurred during the ITC investigation, relating to discovery relevant and obtained for use in this case.

B.   Exemplification and Copying Costs

Under 28 U.S.C. § 1920(4), a court may tax costs "for exemplification and [for] making copies of any materials where the copies are necessarily obtained for use in the case."  "Fees for exemplification and copying 'are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production.'"  Zuill v. Shanahan, 80 F.3d 1366, 1371 (9th Cir. 1996) (citing Romero v. City of Pomona, 883 F.2d 1418, 1428 (9th Cir. 1989), abrogated on other grounds, Townsend v. Holman Consulting Corp., 914 F.2d 1136 (9th Cir.

1990)).

O2 Micro objects to various costs attributed to exemplification and copying.  MPS and ASUSTeK did not respond specifically to O2 Micro's objections, but instead asserted generally that the costs to which O2 Micro objects are recoverable under Civil L.R. 54-3(d).

MPS and ASUSTeK also seek to recover costs for the preparation of visual aids used in the ITC proceeding; O2 Micro objects to recovery of such costs.  Costs may be recoverable for visual aids that are "reasonably necessary to assist the jury or the Court in understanding the issues at the trial."  Civil L.R. 54-3(d)(5). The costs to which O2 Micro objects were billed between October, 2009 and December, 2009, which was before the Court ruled on the parties' motions for summary judgment.  Thus, at that time, it was not evident that those visual aids were necessary for trial in this action.  Further, these costs are not related to discovery-related expenses.  The Court accordingly disallows recovery of $84,125.61 in costs related to the preparation of visual aids used in the ITC proceeding.

O2 Micro argues that costs for optical character recognition (OCR) are not taxable as reproduction or exemplification costs. Courts have concluded that OCR processing of documents are generally for the convenience of counsel and, thus, expenses related to it are not recoverable.  See, e.g., Computer Cache Coherency Corp. v. Intel Corp., 2009 WL 5114002, at *4 (N.D. Cal.). Accordingly, recovery of $17,655.57 in OCR processing costs is disallowed.

O2 Micro also objects to costs for the conversion of documents

17

United States District Court
For the Northern District of California

in excess of the first set.  For instance, one invoice contains two charges for $9,799.88 related to the conversion of documents from their native file format to a generally-accessible file format: one charge was for conversion services with Bates stamping, whereas the other was for such services without Bates stamping.  <u>See, e.g.</u>, Bill of Costs, Ex. 3, at 23.  Although electronic conversion charges are generally recoverable, MPS and ASUSTeK have not established the necessity of multiple conversions of the same documents.  Thus, recovery of $26,702.86 in such costs is disallowed.

O2 Micro also contests costs related to creating duplicate copies of DVDs containing electronic discovery and copying a DVD entitled "Preparing for a Deposition in a Business Case," Bill of Costs, Ex. 3, at 69.  For reasons stated above, costs for duplicate copies of electronic discovery DVDs are disallowed.  Costs related to duplicating the deposition preparation DVD are disallowed because this DVD does not appear to be discovery material.  Thus, recovery of $1,160.75 related to such services is disallowed.

Additionally, O2 Micro contends that costs related to copies made for use at the ITC hearing should not be recoverable.  In particular, O2 Micro objects to costs to create witness binders for the ITC hearing and to duplicate briefs filed in the ITC proceeding.  <u>See, e.g.</u>, Bill of Costs, Ex. 3, at 58; <u>id.</u> at 79.  Although the "cost of reproducing disclosure or formal discovery documents when used for any purpose in the case is allowable," Civil L.R. 54-3(d)(2), MPS and ASUSTeK have not established that the copies of discovery documents used in the ITC hearing were used for any purpose in this case.  Further, the cost of reproducing

18

"motions, pleadings, notices, and other routine papers is not allowable."  Civil L.R. 54-3(d)(3).  Thus, the Court disallows recovery of $5,480.26 for duplication costs incurred around the date of the ITC hearing and evidently related to that hearing.

O2 Micro also objects to $390.59 in costs related to the deposition of "M. Grover," who O2 Micro claims was not deposed in this case.  This amount is disallowed.

O2 Micro objects to various costs for "Native Processing Plus Images."  See Bill of Costs, Ex. 3, at 44-45.  Unlike other electronic discovery expenses, these costs bear no indication that they related to document production.  Compare id. at 44 with id. at 36.  Thus, recovery of $25,214.17 for costs related to "Native Processing Plus Images" services is disallowed.

Finally, O2 Micro objects to recovery for the "auto-coding" of documents.  Bill of Costs, Ex. 3, at 83.  MPS and ASUSTeK do not establish that such coding related to exemplifying or copying documents.  Thus, recovery of $26,247.65 for coding documents is disallowed.

O2 Micro's remaining objections are not well-taken.  O2 Micro complains of costs related to multiple copies for exhibits used during depositions.  However, the three prevailing parties are entitled to recovery of these costs.

The Clerk taxed $392,171.73 for exemplification and copying costs.  Of this amount, the Court disallows $186,977.46 for the reasons stated above.  This reduces MPS and ASUSTeK's award for such costs to $205,194.27.

C.   Deposition Costs

As noted above, MPS and ASUSTeK may recover costs related to

depositions taken for both this action and the ITC proceeding.  In addition to its general objection concerning discovery used in the ITC proceeding, O2 Micro also argues that the ten-deposition limit provided under Federal Rule of Civil Procedure 30(a)(2) precludes MPS and ASUSTeK from recovering costs for more than ten depositions.  However, 28 U.S.C. § 1920(2) does not link recovery for deposition costs to Rule 30(a)(2).  Further, in the ITC investigation, all parties evidently exceeded the number of depositions permitted under Rule 30(a)(2).  Accordingly, O2 Micro's objection on this point is not well-taken.

O2 Micro also objects to costs to make additional copies of deposition transcripts.  However, MPS and two ASUSTeK entities were prevailing parties in this action.  Thus, recovery of costs for additional copies is allowable.

Finally, O2 Micro objects to $25.00 for FedEx charges attributed to deposition costs.  This amount is disallowed because it is not recoverable as deposition costs under 28 U.S.C. § 1920(2) or Civil L.R. 54-3(c).

The Clerk taxed $18,169.37 for deposition costs, disallowing recovery of $96,624.28 for "billings in ITC case."  Am. Bill of Costs.  The Court reverses this disallowance; MPS and ASUSTeK are entitled to recover costs related to depositions taken in the ITC proceedings.  However, the Court disallows $25.00 in expedited shipping costs.  Accordingly, $114,768.65 in deposition costs is taxed against O2 Micro.

D.   Costs for Service of Subpoenas

The Clerk taxed $2,130.26 for costs related to service of subpoenas.  Of this amount, O2 Micro objects to $1,178.17 for costs

United States District Court
For the Northern District of California

related to service of third-party subpoenas, asserting that these subpoenas were unnecessary.  However, MPS and ASUSTeK have established that such service was reasonably required.  Civil L.R. 54-3(a)(2).  Accordingly, the Clerk's taxation of such costs is left undisturbed.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part MPS and ASUSTeK's motion for attorneys' fees and non-statutory costs (Docket No. 410), GRANTS MPS and ASUSTeK's motion for review of the Clerk's taxation of their costs against O2 Micro (Docket No. 438) and GRANTS in part and DENIES in part O2 Micro's motion for review of the Clerk's taxation of costs against it (Docket No. 439).  Although MPS and ASUSTeK are entitled to reasonable attorneys' fees, the Court DEFERS its decision on the amount to which MPS and ASUSTeK are entitled and directs the parties to, within twenty-eight days of the date of this Order, meet and confer to attempt to determine this amount.  If the parties cannot agree, within thirty-five days of the date of this Order, MPS and ASUSTeK shall file documentation supporting its fees request.  Such documentation shall include detailed time records from which the Court can determine the nature of the tasks billed.  Additionally, any fees request shall not contain any amounts for costs taxed.  In support of their fees request, MPS and ASUSTeK may file a brief, not to exceed twenty pages.  O2 Micro may respond, in a brief not to exceed twenty pages, within fourteen days of the date MPS and ASUSTeK file their supplementary documentation.  If O2 Micro files a response, MPS and ASUSTeK may reply, in a brief not to exceed ten pages, within seven days of the date that response is filed.

**United States District Court**
For the Northern District of California

1     MPS and ASUSTeK's costs are taxed against O2 Micro as follows:

2 $2,130.26 for service of subpoenas; $114,768.65 for deposition

3 transcripts; $205,194.27 for exemplification and copying services;

4 and $17,221.95 for compensation for the court-appointed expert.

5 For these costs, O2 Micro shall remit $339,315.13 to MPS and

6 ASUSTeK forthwith.

7     IT IS SO ORDERED.

8

9 Dated: 3/3/2011



CLAUDIA WILKEN
United States District Judge

22