IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>02 MICRO INTERNATIONAL LIMITED,<br><br>    Defendant.<br>_____/<br>02 MICRO INTERNATIONAL LIMITED,<br><br>    Counterclaimant,<br>  v.<br><br>MONOLITHIC POWER SYSTEMS, INC.;<br>ASUSTEK COMPUTER INC.; ASUSTEK<br>COMPUTER INTERNATIONAL AMERICA;<br>BENQ CORPORATION; AND BENQ AMERICA<br>CORP.,<br><br>    Counterclaim-Defendants<br>_____/ | No. C 08-4567 CW<br><br>ORDER GRANTING<br>MPS' MOTION FOR<br>ATTORNEYS' FEES<br>AND NON-TAXABLE<br>COSTS |

    Plaintiffs and Counterclaim-Defendants Monolithic Power Systems, Inc., Asustek Computer and ASUS Computer International (together, MPS) have recalculated their attorneys' fees request in accordance with the Court's January 17, 2012 Order.  Defendant and Counterclaimant 02 Micro International Limited (02 Micro) has filed a response and MPS has filed a reply.  The matter was taken

under submission on the papers.  Having read all the papers filed by the parties, the Court approves MPS' recalculation of its attorneys' fees and awards attorneys' fees in the amount of $8,419,429 and non-taxable costs in the amount of $663,151.

## BACKGROUND

In its January 17, 2012 Order Regarding Attorneys' Fees and Non-Taxable Costs, the Court granted MPS' request for non-taxable costs in the amount of $663,151 and ordered MPS to recalculate its attorneys' fees request in accordance with the Court's determination.  The Order (1) limited the recovery of fees for the legal services of the Finnegan firm to $4,000,000 for work done after March 2009, in accordance with a fee cap agreement between Finnegan and MPS; (2) limited the recovery for fees corresponding to block-billed time entries to twenty-five percent of those fees; and (3) granted MPS leave to file an additional fee application for work done in preparation of the fee application.

///

///

///

///

2

MPS recalculated its fee request as follows:

| | |
|---|---:|
| Fees generated by the Fish and Richardson (FR) firm | $ 281,162 |
| Fees generated by the Latham firm | $3,455,333 |
| Fees generated by the Finnegan firm prior to the March 2009 fee cap agreement | $ 339,899 |
| Fees generated by the Finnegan firm after the March 2009 fee cap agreement | $4,000,000 |
| Fees generated in preparing attorneys' fees application | $ 343,035 |
| Total Attorneys' Fees | $8,419,429[1] |
| Non-taxable costs | $ 663,151 |
| Total Fees and Non-taxable Costs Request | $9,082,580 |

MPS clarifies that all fees requested have been discounted by ten percent, as was assumed by the Court in the January 17, 2012 Order. MPS documents the recalculated amounts with new spreadsheets of billing records for the Finnegan and Latham firms adhering to the Court's instructions in the January 17, 2012 Order. MPS has separated its billing records into work performed by the Finnegan firm and work performed by the Latham firm, including the work performed in preparing the fee application. The billing records show that Finnegan provided $6,445,862 in legal services after March 2009, but, in keeping with the Court's directive, MPS is calculating reimbursement of $4,000,000. MPS

---

[1] MPS indicates that the subtotal is $8,423,129. This appears to be an error; the Court calculates the subtotal to be $8,419,429.

3

has also provided a separate category for all the block-billed time entries it previously identified and, in keeping with the Court's directive, has calculated reimbursement of twenty-five percent of the total amount. MPS explains that the new reports "reflect the specific rates assigned to each time keeper at the time each entry was made. (The rates on the original spreadsheet, and therefore on the initial reports, reflected billing rates for each particular individual that were the result of averaging the individual's rates for 2009 and 2010)."

MPS also requests an award of interest at the legal rate on the amount of $9,082,580 from March 3, 2011, the day the Court granted its motion for attorneys' fees pursuant to 35 U.S.C. § 285. O2 Micro objects on several grounds to MPS' re-calculation of its fees.

## DISCUSSION

I. Finnegan's Fees for Preparation of Fee Application

O2 Micro objects to the $249,834 for services performed by Finnegan in preparing the fee application. O2 Micro argues that this Court has held that recovery of work performed by Finnegan is limited to the $4,000,000 fee cap negotiated between the parties on the ground that it would be inequitable to require O2 Micro to pay MPS more in fees than MPS paid to Finnegan. MPS responds that Finnegan's fees for preparing the fee application were incurred after dismissal of the O2 Micro infringement claims and, thus, were not covered by the fee cap. See Supplemental Declaration of

4

Finnegan partner, Scott Mosko, at ¶ 3. MPS also asserts that it has paid the $249,834 to Finnegan for its work on the fee application. Id. In its January 17, 2012 Order, the Court allowed MPS to submit an additional request for fees incurred in the preparation of its attorneys' fees application and did not limit the fee request to work performed by Latham. Thus, an award of these fees will not require 02 Micro to pay MPS more than MPS has paid to Finnegan. Therefore, 02 Micro's objection to the $249,834 for Finnegan's work in preparing the fee application is overruled.

II. Different Billing Rates

02 Micro objects to the fact that MPS has altered its attorneys' billing rates to "reflect the specific rate assigned to each time keeper at the time each entry was made." 02 Micro points out that the Court did not require MPS to revisit the issue of reasonable attorney billing rates and only instructed MPS to recalculate its fee request based on the hours allowed or disallowed. 02 Micro suggests that, to remedy this, all billing entries associated with MPS' recalculation be reduced by two percent, which amounts to $69,107, or that MPS be required to resubmit its billing entries using the previous rates.

MPS indicates that it used the actual rates in this fee application "to provide the Court with an even more exact accounting." MPS explains that the net effect of using the actual billing rates for the years 2009 and 2010, rather than the blended

5

rates that it used in its original fee application, was to reduce the fees requested by $6,207.

The Court did not require MPS to change the rates billed by each attorney. However, because the change in the billing rates is minor, it represents a more accurate picture of the attorneys' rates and it results in a reduction of total fees requested, the Court concludes that any further reduction is not warranted. Therefore, 02 Micro's objection to the change in billing rates is overruled.

III. Unreasonable Hours in Preparing Fee Application

02 Micro objects to the "unreasonably high number of hours" expended in preparing the fee application and requests a twenty-five percent reduction of fees requested for work performed by Latham.[2] This argument is without merit. As acknowledged by 02 Micro, the Court denied its previous request for a reduction in fees for preparing the fee application. The fees incurred in preparing the fee application were reasonable and necessary in light of the fact that Latham and Finnegan were required to review, analyze and summarize two years of extensive billing records. Therefore, 02 Micro's objection to the number of hours expended in preparing the fee application is overruled.

---

[2] As noted above, 02 Micro objects to all the fees requested for the work performed by Finnegan.

6

IV. Accrual of Post-Judgment Interest

02 Micro argues that MPS is not entitled to an award of interest from March 3, 2011, the day the Court granted MPS' motion for attorneys' fees, because the fees had not been quantified at that time. Citing 28 U.S.C. § 1961(a), which provides that post-judgment interest accrues from the date of entry of judgment, 02 Micro argues that interest cannot accrue until the Court enters judgment as to the fee amount. 02 Micro also cites Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 (Fed. Cir. 2001), for the proposition that there is no final judgment regarding a fee award until the district court enters judgment as to the amount of fees.

Special Devices is inapplicable here. It addressed the question of whether an unquantified award of attorneys' fees pursuant to 35 U.S.C. § 285 is final for purposes of conferring jurisdiction on the Federal Circuit. Id. at 1343. It did not address when interest begins to accrue on an award of attorneys' fees.

Under 28 U.S.C. § 1961(a), interest is allowed on money judgments in civil cases recovered in a district court accruing "from the date of the entry of the judgment." Courts have interpreted this to mean that post-judgment interest is calculated "from the date of the judgment establishing the right to the award." Takeda Chem. Indus. Ltd. v. Mylab Labs., Inc., 2007 WL 840368, *14 (S.D.N.Y.) (attorneys' fees award under § 285); Mathis

7

1  v. Spears, 857 F.2d 749, 769 (Fed. Cir. 1988) (same); Friend v.
2  Kolodzieczak, 72 F.3d 1386, 1391-92 (9th Cir. 1995) (on attorneys'
3  fee award under 42 U.S.C. § 1988, post-judgment interest accrues
4  from date entitlement to fees is secured, rather than from date
5  exact quantity of fees is set).
6     Thus, MPS is entitled to post-judgment interest on its award
7  of attorneys' fees and non-taxable costs accruing from March 3,
8  2011, the date the Court issued its order determining MPS'
9  entitlement to such an award.  This amount does not include the
10 $343,035 in attorneys' fees subsequently incurred in the
11 preparation of the fee application, which shall accrue interest
12 commencing on the date of this Order.  Interest is to be
13 calculated at the legal rate as set forth in 28 U.S.C. § 1961(a).

V. 02 Micro's Objection to Non-taxable Costs

     In its January 17, 2012 Order, the Court stated that 02 Micro
had not objected to MPS' request for non-taxable costs.  02 Micro
clarifies that it objected to non-taxable costs and cites to page
eleven in its opposition to MPS' May 5, 2011 submission
documenting fees and costs, in which 02 Micro stated, "The court
has previously ruled that discovery costs not solely related to
the ITC investigation are recoverable.  02 disagrees and preserves
its objection for appeal, but even without challenging that
decision, it is clear that fees related to work on issues that
were in no way part of this case should not be awarded."  02 Micro
also points to a footnote on the same page in which it stated, "02

also separately objects to any ITC Discovery costs incurred before this Court entered the order allowing parties to use ITC discovery in this case.  Until that order issued, the parties' discovery efforts could not have been considered to be related to this case.  Those costs total $341,100.05."

The Court acknowledges that 02 Micro objects to MPS' request for non-taxable costs, but overrules the objection.

VI. Payment of Taxable Costs

MPS indicates that 02 Micro has not paid the $339,315 that was taxed as costs by the Court and requests that the Court order 02 Micro to pay this amount with interest accruing from March 3, 2011, the day the Court ordered 02 Micro to remit $339,315 in taxable costs forthwith.  02 Micro does not respond to this request.  Therefore, the Court orders 02 Micro immediately to pay the $339,315 in costs previously taxed by the Court, with interest at the legal rate accruing from March 3, 2011.

## CONCLUSION

For the foregoing reasons, the Court awards attorneys' fees in the amount of $8,419,429 and non-taxable costs in the amount of

///

///

///

9

$663,151, with interest accruing as set forth in this Order.  A separate judgment shall be entered by the Clerk of the Court.

    IT IS SO ORDERED.


Dated: 5/3/2012

                                     CLAUDIA WILKEN
                                     United States District Judge